UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JAMES E. KEENER,                          )
                                          )
            Plaintiff,                    )
                                          )
v.                                        )          No. 3:05-0259
                                          )          Judge Brown
RANDY JETT, ET AL.,                       )
                                          )
            Defendants.                   )

To:     The Honorable Aleta A. Trauger, United States District Judge

REPORT AND RECOMMENDATION

For the reasons stated below, the undersigned RECOMMENDS that: 1) Keener's motion for

summary judgment (DE # 26) be denied; 2) Shonowo's motion to dismiss (DE # 23, 39, 44) be

denied; 3) Kenner's motion for joinder (DE # 40) be denied; 4) Keener's motion to strike Unger's

further attempt to intervene (DE # 51) be granted.  In addition to the foregoing, the undersigned also

recommends that appropriate sanctions be imposed on Unger in the event she attempts to interfere

in these proceedings again.

I.  INTRODUCTION

The plaintiff, James E. Keener, proceeding *pro se*, is a resident of Hemet, California.  The

original defendants, Bennie Jean Shonowo, Randy Jett, and ten (10) John Doe defendants are alleged

to own and/or operate a credit repair business – "Credit Secrets" – located in Montgomery County,

Tennessee.  Keener alleges that the defendants violated the Credit Repair Organizations Act of 1996,

15 U.S.C. §§ 1679, *et seq.* ("the Act") and the Tennessee Consumer Protection Act of 1977, Tenn.

Code Ann. §§ 47-18-101, *et seq.*  (DE # 1, ¶ 1, p. 1)  Keener also alleges that the defendants have

committed fraud and that they have been unjustly enriched.  (DE # 1, ¶ 1, pp. 1, 7-12)  This action

was referred to the undersigned on April 5, 2005 for case management, decisions on all pretrial, non-

dispositive motions, to prepare a Report and Recommendation (R&R) on all dispositive motions

under 28 U.S.C. § 636(b)(1)(A) and (B), and to conduct any necessary proceedings under Rule 72(b), Fed. R. Civ. P.  (DE # 2)

## II.  BACKGROUND

Keener filed his complaint on March 31, 2005.  (DE # 1)  On May 13, 2005, Keener moved to dismiss his complaint against defendants John Doe 1 through 10 because the John Doe defendants "were never identified or served with a copy of the summons and complaint."  (DE # 3)  The action was "TERMINATED at the plaintiff's request" as to defendants John Doe 1 through 10 on May 16, 2005.  (DE # 9, p. 1)

Beginning May 13, 2005, Keener sought default judgment against the remaining defendants, Shonowo and Jett, because they had not responded to the complaint.  (DE # 5-8, 10)  However, because Keener had not first requested a default, and because he had not served a copy of the default pleadings on Shonowo and Jett, the undersigned granted Shonowo and Jett additional time to respond to the complaint.  (DE # 9, p. 2)  Keener was advised that, if Shonowo and Jett did not respond within the time specified, then he could then seek default as to any non-responding defendant.  (DE # 9, p. 2)  In that same Order, Keener was advised that service of process on Shonowo was defective, *i.e.*, the process server declared in her affidavit dated April 9, 2005 that she had served process on Shonowo on April 10, 2005.  (DE # 9, pp. 1-2)

Neither Shonowo nor Jett responded to the complaint within the additional time provided. Therefore, on June 30, 2005, Keener renewed his effort to have default judgment entered but only as to Shonowo.  (DE # 11-12)  On July 1, 2005, an Order was entered advising Keener of the following: 1) the affidavit (DE # 10) in which he attested that the Soldiers' and Sailors' Civil Relief Act of 1940 did not apply to the defendants was insufficient;[1] 2) the previously identified defect in

---

[1]It was explained that the Soldiers' and Sailors' Relief Act of 1940 had been replaced by the Servicemembers Civil Relief Act of 2003, and that his affidavit did not comply with the

2

the service of process on Shonowo had not been corrected; 3) that he still had not filed a motion for default as to the remaining defendants and, as a consequence, seeking entry of a default judgment was improper.  (DE # 13)

Keener took no action with respect to the July 1, 2005 Order.  On August 9, 2005, an R&R was entered recommending that the case be dismissed without prejudice for "failure to prosecute by obtaining service process . . . as well as . . . for failure to prosecute and to obey court orders."  (DE # 14, p. 2)  Shortly thereafter, on August 15, 2005, the Clerk of Court entered an Order denying Keener's request to enter default judgment against Shonowo for failure to comply with the Servicemembers Civil Relief Act.  (DE # 15)

Keener filed objections to the R&R on August 22, 2005.  (DE # 16)  That same day Keener filed an amended affidavit in support of his request for entry of default as to Shonowo.  (DE # 17)

The District Judge entered an Order on August 25, 2005 affirming the R&R in part and rejecting it in part.  (DE # 18)  The District Judge determined that service of process as to Shonowo was "sufficient" despite the anachronism reflected in the return and the affidavit filed by the server.  (DE # 18, pp. 1-2)  With Keener's concurrence, the case was dismissed without prejudice as to Jett for want of service of process.  (DE # 18, p. 2)  The District Judge also referred the matter to the Clerk of Court to determine whether default should be entered as to Shonowo in view of Keener's amended affidavit submitted on August 15, 2005.  (DE # 18, p. 2)

On September 14, 2005, Shonowo filed a document captioned "TO THE COURT" in which she asked the Court to dismiss Kenner's action against her with prejudice, arguing that she had nothing to do with "Credit Secrets," and that her name and photograph were used "for advertisement

requirements set forth in § 521 of the new Act.

3

purposes only." (DE # 19) Liberally construing the foregoing document as an "answer,"[2] the undersigned entered a preliminary scheduling Order on September 19, 2005 instructing the parties that discovery was to be completed and dispositive motions filed not later than January 16, 2006. (DE # 21, p. 1)

Following a telephone conference on October 4, 2005, an Order was entered in which the undersigned advised the parties that a proper request for a jury trial had not been made in accordance with Local Rule LR38.01, and that it appeared that Jett still resided in the Clarksville area, not in Africa as previously represented by Shonowo. (DE # 24) The undersigned also noted that, "[i]n the event a jury is not requested, the Magistrate Judge will probably schedule an evidentiary hearing where witnesses will testify and the parties will present their evidence . . . ." (DE # 24, p. 2)

To date, neither party has made a request for a jury trial. Instead, Keener filed a motion for summary judgment and supporting documentation on January 9, 2006. (DE # 26-30) On January 24, 2006, Shonowo filed a response to Keener's motion for summary judgment. (DE # 31)

On January 31, 2006, Jodi Unger, who is not a party to this action, moved for leave to intervene *pro se* supported by a personal declaration in which she characterized Keener as a "serial litigator" and alleging that she had knowledge of a similar case involving Keener. (DE # 32-33) The undersigned denied Unger's request on February 1, 2006. (DE # 34) On February 3, 2006, Unger filed a request for the District Judge to review the undersigned's February 1 Order. (DE # 35) Finding that the undersigned's Order was not "clearly erroneous or contrary to law," the District Judge denied Unger's motion on February 8, 2006 letting stand the Order denying Unger's motion

---

[2]The courts are required to construe *pro se* pleadings liberally. *See Boag v. McDougall*, 454 U.S. 364, 365 (1982).

to intervene.[3]  (DE # 36)

Shonowo filed a motion to dismiss on February 13, 2006.  (DE # 39)  Keener opposed Shonowo's motion to dismiss on February 22, 2008.  (DE # 41-42)  That same date, Keener moved to join Jett under Rule 19(a), Fed. R. Civ. P., alleging that Shonowo misrepresented to the Court that Jett had moved to Africa and that Jett had been in the Clarksville area all along.  (DE # 40, 43)

On March 3, 2006, Shonowo renewed her motion to dismiss alleging that Keener is an "extortionist [whose] only interest is unjustified financial gain for himself," and opposed Keener's motion to join Jett.  (DE # 44)  Keener filed a response to Shonowo's renewed motion to dismiss and opposition to joining Jett on March 23, 2006.  (DE # 46-48)  Shonowo filed a reply to Keener's response on the joinder issue on April 4, 2006.  (DE # 49)

Despite the District Judge's explicit Order denying Unger's request to intervene, Unger filed copies of two documents on April 25 2006 – both of which pertained to an unrelated lawsuit in California – alleging that Keener filed a falsified copy of one of those two documents in the instant action.  (DE # 50)  Keener filed an objection to Unger's unauthorized intervention on May 15, 2006 which the undersigned liberally construes as a motion to strike.  (DE # 51-52)  Thereafter, Unger filed a reply to Keener's objection on May 22, 2006.  (DE # 53)

The following matters presently are before the Court: 1) Keener's motion for summary judgment (DE # 26); 2) Shonowo's motion to dismiss (DE # 23, 39, 44); 3) Keener's motion for joinder (DE # 40); 4) Keener's motion to strike (DE # 51).  The following analysis addresses each of the foregoing in the order that is most appropriate.

III. ANALYSIS

_____

[3]Keener filed a response opposing Unger's request to intervene.  (DE # 37-38)  Because Keener's response was received the same day that the Order was entered denying Unger's request, the response was not considered.

5

### A. Keener's Motion to Strike (DE # 51)

Despite an Order of the Court denying her permission to intervene, Unger filed a document captioned "INTERVENOR'S NOTICE OF DOCUMENT FALSIFICATION" on April 25, 2006 alleging that Keener filed a "falsified copy of a court order" in his response in opposition to Shonowo's motion to dismiss. (DE # 50) More particularly, Unger alleges that Keener falsified a copy of an Order entered in a California case, *Keener v. Pensacola Enterprises, Inc. dba Artofcredit.com, et al.*, Case No. 2:05-3231 (C.C. Cal. 2006) – attached at Ex. A to the notice – because he "did not want this Court to know that his [*ex parte* motion for a temporary restraining order] had been summarily denied." (DE # 50, p. 2) In support her accusation, Unger also filed a copy of the declaration of Harry I. Jacobs, attorney for the defendant in the California case, also attached at Ex. A to the notice, who attested that he had personal knowledge of Keener's improper acts in that case. Finally, Unger contends that by labeling his response as an "objection," Keener sought to deprive Shonowo of "a designated time period to oppose [his objection], or to ask the court to take judicial notice of the now-admitted falsification." (DE # 53, p. 1)

Rule 12 (f), Fed. R. Civ. P. provides the following with respect to a motion to strike:

> Upon motion made **by a party** before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made **by a party** within 20 days after the service of the pleading upon a party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

(emphasis added) Unger is not a party to this litigation. Therefore, Rule 12(f) does not apply to her or the document that she filed. Moreover, Unger made it known on May 22, 2006 to Shonowo – who appears in the certificate of service – that Keener's objection was something to which Shonowo ought to respond. To this date, however, Shonowo has not filed anything regarding this issue even

6

though she has had more than 1½ months to do so.  For these reasons, and because the District Judge previously denied Unger's motion to intervene in this action, Keener's motion to strike (DE # 51) should be granted.  However, the matter does not end here.

Keener asserts that the copy of the document to which Unger refers is a "a redacted copy of the <u>CIVIL CASE MINUTES</u> in a wholly unrelated and irrelevant matter."  (DE # 51, p. 2)(capitalization and underline in the original)  Although the undersigned has independently verified that the copy of the document provided by Unger is, in fact, a copy of the complete document at issue, Keener's claim that the copy is a "redacted" copy has merit.  First, in his earlier memorandum of points and authorities pertaining to the document at issue, Keener specifically links the text in the copy that he submitted to Unger's previous charge that he has been labeled as a "vaxatious litigator" (DE # 32, ¶ 6, p. 3), a charge repeated by Shonowo in her motion to dismiss (DE # 39).  (DE # 42, p. 2)  The paragraph in the copy of the document at issue pertains to that issue and Keener's related argument that the motion in the California case to have him labeled as such was denied.  (DE # 42, pp. 2-3)

Second, the text in the copy of the document provided by Keener clearly shows a single paragraph labeled as paragraph "II," the inference being that the original document consisted of more than that single paragraph.  (DE # 42, Ex. B)  Although Keener did not previously specify that the copy of the document at issue was a redacted copy, the document is clearly incomplete on its face.   Finally, the first omitted paragraph in the complete document – unnumbered – merely summarizes the issues that were before the district court in California at the time.  (DE # 50, Ex. B)  The second omitted paragraph – numbered paragraph "I" – pertains solely to the defendants' motion to dismiss in that action.  (DE # 50, Ex. B)  The last omitted paragraph – numbered paragraph "III" – pertains to the district court's denial of Keener's motion for a temporary restraining order.  (DE

7

# 50, Ex. B)  Of course, the denial of Keener's motion for a temporary restraining order has nothing whatsoever to do with the reason why he submitted the document in the first place, *i.e.*, to demonstrate that he had not been branded a "vexatious litigator" as Unger has alleged.

As shown above, nothing omitted from the document at issue is relevant to the allegation that Keener is a serial litigator or his argument that he was not labeled as such.  While the undersigned will not go so far as to say that Unger's unauthorized interference was, in itself, intended to mislead the Court, Unger's unsolicited input has been, at the very least, unhelpful and disruptive in that it has taken time and effort to resolve.  More vexing, however, is that Unger's recent attempted interference totally disregarded the Court's earlier Order expressly denying her request to intervene in this action.  For these reasons, the undersigned strongly recommends that, if Unger attempts to interfere in these proceedings again, appropriate sanctions should be imposed to force her to comply with the Court's Order denying her request to intervene.

## B.  Keener's Motion for Joinder (DE # 40)

As previously noted, this action was dismissed without prejudice as to Jett because Keener was unable to serve process on him.  (DE # 18)  Keener now moves to join Jett under Rule 19, Fed. R. Civ. P., asserting that Jett "did not move to Africa," that he "has actually participated in this litigation," and that he relied to his detriment on representations made by Shonowo that Jett moved to Africa when he agreed to dismiss the complaint against Jett without prejudice.  (DE # 40, pp. 2, 5)  Keener argues that joinder is necessary to ensure complete relief.  (DE # 40, pp. 3-4)

Rule 19, Fed. R. Civ. P., on which Keener relies provides, *inter alia*, the following:

> (a)  Persons to be Joined if ***Feasible***.  A person ***who is subject to service of process*** and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action it (1) ***in the person's absence complete relief cannot be accorded*** among those already parties, or

8

> (2) the person claims an interest in relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. . . .

As shown above, Rule 19(a) pertains when joinder is "feasible." Although the rule does not define what constitutes "feasible," the phrase "[a] person who is subject to service of process . . . ." supports that conclusion that, if process cannot be served on an individual sought to be joined, then joinder is not "feasible." Keener has not established that process can be served on Jett, despite the fact that he became aware on October 4, 2005 that Jett did not go to Africa.

Keener asks the Court to enter an Order finding that Jett has been served by way of substitute service under Rule 5, Fed. R. Civ. P. However, apart from his claims that service was attempted at the commencement of this action, there is nothing in the record to substantiate his claim that he tried to serve Jett, much less that any of the alternative means of service under Rule 5(b)(2)(a) were among the means attempted. Moreover, as noted above, in the 9-plus months since Keener become aware that Jett still resides in the Clarksville area, Keener does not appear to have made any effort to establish that process can be served on Jett so that he can be joined.

Finally, Keener argues that joining Jett is necessary to obtain complete relief in this action. However, if Jett is not joined, Keener's position is no different than it was when agreed to dismiss the complaint against Jett without prejudice in the first place. Therefore, this argument is without merit.

For the reasons explained above, Keener's motion to join Jett in these proceedings (DE # 40) should be denied.

### C. Shonowo's Motion to Dismiss (DE # 23, 39, 44)

9

Although Shonowo does not say so specifically, the undersigned liberally construes her motion to dismiss to have been brought under Rule 12(b)(6), Fed. R. Civ. P. In dismissing a complaint pursuant to Rule 12(b)(6), "[t]he court must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true." *Beztak Land Co. v. City of Detroit*, 298 F.3d 559, 565 (6th Cir. 2002)(quoting *Block v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998)). "'A motion to dismiss under Rule 12(b)(6) should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (citing *Buchanan v. Apfel*, 249 F.3d 485, 488 (6th Cir. 2001)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Despite the instruction to construe the complaint liberally in the plaintiff's favor, a complaint must contain "either direct or inferential allegations respecting all the material elements" and those allegations must amount to more than "bare assertions of legal conclusions." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

Shonowo makes two basic arguments in her multi-part motion to dismiss. First, Shonowo argues that her son, Jett, is the sole owner of "Credit Secrets," that she has nothing to do with "Credit Secrets," and that her "picture was used on the website for advertisement purposes only." (DE # 23, 44, p. 1) In support of that argument, Shonowo has submitted a copy of a document purported to be an affidavit executed by Jett on January 23, 2006 in which Jett attests as follows:

> I, Randy Jett, is [*sic*] the sole owner and author of the credit repair e[-]book sold on the websites: www[.]cleancreditsecrets.com[] and www[.]top-credit-repair.com, that is referred to by the plaintiff, James Keener[.] I use my mothers' [*sic*] picture on all my websites for advertisement purposes only[.] I am also the sole owner of the following two websites. They are not credit repair websites. www.3500weekly.com, and work-home-money-internet.com.

(DE # 31, Ex. 1) Notwithstanding Jett's affidavit to the contrary, Keener has submitted numerous

10

documents from which a reasonable trier of fact could conclude that Shonowo plays a more direct role in "Credit Secrets" than she claims. Specifically, in the copies of the on-line advertisements provided by Keener, Shonowo speaks in the first-person regarding what "Credit Secrets" and she have to offer to potential clients. (DE # 6, Ex. A; DE # 29, Ex. F-L) In the copy of the on-line book purchased by Keener, Shonowo states, "There's my Son's Credit Reports who I recently helped" (DE # 6, Ex. B; DE # 28, Ex. O, p. O-1), the inference being that, because she was able to help her son, she could help the reader as well. Finally, in a handwritten note attributed to Shonowo, she writes that "I jean work for Randy [Jett] . . . ." (DE # 6, Ex. C)

Whether Shonowo is, or is not, liable to Keener for the activities of "Credit Secrets" is a question of fact. Because it does not appear beyond doubt that Keener cannot prove any facts to support his claim that he is entitled to relief as to Shonowo, Shonowo is not entitled to have this action dismissed under Rule 12(b)(6) on these grounds.

Next, Shonowo challenges Keener's motives for bringing this lawsuit. Specifically, Shonowo alleges that Keener is "an extortionist" with a reputation for filing frivolous lawsuits and whose "only interest is unjustified financial gain for himself." (DE # 39, 44, pp. 1-2) Although she argues these allegations at length, Shonowo's claims are nothing more than naked allegations. Moreover, whether Keener has attempted to extort Shonowo by bringing this lawsuit also is a question of fact. Because it does not appear beyond doubt that Kenner cannot prove that he has committed no wrongdoing, Shonowo is not entitled to have this action dismissed under Rule 12(b)(6) on these grounds.

For the reasons explained above, Shonowo's motion to dismiss (DE # 23, 39, 44) should be denied.

### D. Kenner's Motion for Summary Judgment (DE # 26)

Summary Judgment is appropriate only where "there is no genuine issue as to any material

11

fact . . . and the moving party is entitled to summary judgment as a matter of law." Rule 56(c), Fed. R. Civ. P., *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Newman v. Federal Express Corp.*, 266 F.3d 401, 404-05 (6th Cir. 2001). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict favorable to the non-moving party. *Id*. at 249-50. Inferences from underlying facts "must be viewed in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001), *cert. denied*, 534 U.S. 896 (2001).

In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon County*, 203 F.3d 426, 431 (6th Cir. 2000), *cert. denied*, 531 U.S. 875 (2000). If there is a "genuine issue of material fact" then summary judgment should be denied. *Id*. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 566 (6th Cir. 2001)(quoting *Celotex Corp.*, 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir.1991). To defeat summary judgment, the party opposing the motion "must present 'affirmative evidence' to support his/her position; a mere 'scintilla of evidence' is insufficient." *Bell v. Ohio State University*, 351 F.3d 240, 247 (6th Cir. 2003)(quoting *Anderson*, 477 U.S. at 252).

12

Under the Act, a "credit repair organization" is defined as:

> any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration for the express or implied purpose of (i) improving any consumer's credit record, credit history, or credit rating; or (ii) providing advice or assistant to any consumer with regard to any activity or service in clause (i) . . . .

15 U.S.C. § 1679(a). Practices prohibited under § 1679b of the Act are as follows:

(a) In General

No person may –

> (1) make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading (or which, upon the exercise of reasonable care, should be know by the credit repair organization, officer, employee, agent, or other person to be untrue or misleading) with respect to any consumer's credit worthiness, credit standing or credit capacity to –
>
> > (A) any consumer reporting agency (as defined in section 1681a(f) of this title); or
> >
> > (B) any person –
> >
> > > (i) who has extended credit to a consumer; or
> > >
> > > (ii) to whom the consumer has applied or is applying for an extension of credit;
>
> (2) make any statement, or counsel or advise any consumer to make any statement, the intended effect of which is to alter the consumer's identification to prevent the display of the consumer's credit record, history, or rating for the purpose of concealing adverse information that is accurate and not obsolete to –
>
> > (A) any consumer reporting agency;
> >
> > (B) any person –

13

(i) who has extended credit to the customer; or

(ii) to whom the consumer has applied or is applying for an extension of credit;

(3) make or use any untrue or misleading representation of the services of the credit repair organization; or

(4) engage, directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization.

(b) Payment in advance

No credit repair organization may charge or receive any money or other valuable consideration for the performance of any service with the credit repair organization has agreed to perform for any consumer before such service is fully performed.

After careful review of the relevant statutes and the record before the Court, the undersigned concludes that the following genuine issues of material fact exist: 1) whether "Credit Secrets" is a "credit repair organization" within the meaning of the Act; 2) if so, whether "Credit Secrets" provided a service to Keener within the meaning of the Act; 3) if so, whether the service provided constituted a prohibited practice under the Act; 5) and if so, whether Shonowo is liable to Keener for the prohibited activities of "Credit Secrets." Despite the artfulness of his pleadings, Keener has not established that a reasonable trier of fact would rule against Shonowo on the issues identified above. Therefore, Keener's motion for summary judgment (DE # 26) should be denied.

## IV. RECOMMENDATION

For the reasons stated above, the undersigned RECOMMENDS that: 1) Keener's motion for summary judgment (DE # 26) be denied; 2) Shonowo's motion to dismiss (DE # 23, 39, 44) be denied; 3) Kenner's motion for joinder (DE # 40) be denied; 4) Keener's motion to strike Unger's

14

further attempt to intervene (DE # 51) be granted. In addition to the foregoing, the undersigned also recommends that appropriate sanctions be imposed on Unger in the event she attempts to interfere in these proceedings again.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any <u>party</u> has ten (10) days from receipt of this R&R within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have ten (10) days from receipt of any objections filed regarding this R&R within which to file a response to said objections. Failure to file specific objections within ten (10) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

ENTERED this __14th__ day of July, 2006.

/s/ Joe B. Brown
_____
Joe B. Brown
Magistrate Judge

15